**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 10 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ONE FAIR WAGE, INC., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> DARDEN RESTAURANTS INC., <br><br> Defendant-Appellee. | No. 21-16691 <br><br> D.C. No. 3:21-cv-02695-EMC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted August 30, 2022
San Francisco, California

Before: W. FLETCHER, BYBEE, and VANDYKE, Circuit Judges.

Plaintiff-Appellant One Fair Wage, Inc. (OFW) brought suit against Defendant-Appellee Darden Restaurants, Inc. (Darden), under Title VII of the Civil Rights Act of 1964 (Title VII) alleging race- and sex-based disparate impact as a result of two of Darden's employment policies. Because the district court did

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

not address its Article III subject-matter jurisdiction before reaching a statutory question on the merits, we remand to the district court to answer the Article III question in the first instance.

OFW is a not-for-profit corporation that advocates for the elimination of subminimum wages for tipped workers, acting primarily through lobbying efforts directed towards both legislatures and employers. Darden is a Florida corporation and the largest operator of full-service restaurants in the world. OFW filed the present complaint on its own behalf alleging discrimination. It seeks redress for injuries allegedly caused to the organization as a consequence of Darden's cash-wage policy and tipping policy, namely diversion of OFW's monetary and non-monetary resources to assist Darden employees negatively impacted by the policies.

In response to the complaint, Darden filed three motions to dismiss, arguing that (1) the district court lacked subject-matter jurisdiction due to OFW's lack of Article III standing, Fed. R. Civ. P. 12(b)(1); (2) the district court lacked personal jurisdiction over it and venue was improper, Fed. R. Civ. P. 12(b)(2), (3); and (3) the complaint did not state a claim upon which relief can be granted, because OFW lacked statutory standing to bring suit under Title VII, Fed. R. Civ. P. 12(b)(6). In a careful order, the district court granted in part and denied in part Darden's

motions. The court concluded that Darden was subject to personal jurisdiction in California and that venue was proper in the Northern District of California. With respect to Article III organizational standing, the district court suggested that "there has not been a sufficient showing of direct impairment of OFW's ability to operate and function to confer standing," but stopped short of reaching a conclusion because it dismissed on other grounds. The district court instead granted Darden's motion to dismiss for failure to state a claim on the grounds that OFW lacked statutory standing under Title VII; as a non-employee, advocacy organization, OFW did not fall within the "zone of interests" protected by Title VII and was "only derivatively affected by alleged sex and race-based discrimination." This appeal followed, with the parties disputing—and briefing—only the statutory standing question.

We have jurisdiction under 28 U.S.C. § 1291 to review final decisions from the district court. "We review de novo a district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). As always, "we have jurisdiction to determine whether we have jurisdiction to hear the case." *Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1239 (9th Cir. 2006).

Before we can decide the question presented and briefed by the parties, we must satisfy ourselves of our Article III jurisdiction to hear the appeal. That question, in turn, requires us to be satisfied that the district court had Article III jurisdiction over the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("On every writ error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes." (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)). The order of battle—the question of what sequence we may or must decide various issues presented to us—was addressed in *Steel Co. v. Citizens for a Better Environment*.

The Court in *Steel Co.* concluded that federal courts cannot proceed to the merits without first assuring themselves of their Article III jurisdiction. "Article III jurisdiction is always an antecedent question . . . ." *Id.* at 101. The Court thus "decline[d] to endorse" the "doctrine of hypothetical jurisdiction" embraced by some lower courts to "proceed immediately to the merits question, despite jurisdictional objections." *Id.* at 93–94 (internal quotation marks omitted). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* at 94

4

(quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). An exercise of "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion . . . ." *Id.* at 101.

*Steel Co.* suggested in dicta that statutory standing was not a subset of Article III jurisdiction. *See id.* at 97 ("*[S]tatutory* standing . . . has nothing to do with whether there is case or controversy under Article III."); *id.* at 115–17 (Stevens, J., concurring in the judgment) (discussing a number of cases in which the Court had "a choice between a statutory jurisdictional question and a question of Article III standing"); *see also id.* at 92 (Scalia, J., maj. op.) (dismissing the cases discussed by Justice Stevens "because it is not a statutory *standing* question that Justice Stevens would have us decide first, [but a question on] . . . the merits"). In the years following *Steel Co.*, however, the Court recognized some exceptions to the Article III-first dictate of *Steel Co.* The Court, for example, permitted lower courts to decide questions such as personal jurisdiction, *forum non conveniens*, and statutory authorization of a suit against a state before ruling on the courts' Article III jurisdiction. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (*forum non conveniens*); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000) (deciding statutory cause of action before Eleventh Amendment immunity from federal jurisdiction under Article III);

5

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (personal jurisdiction). *Steel Co.*'s progeny left us with some uncertainty about the relationship between subject matter-jurisdiction and subject-matter adjacent questions.

The Court offered some clarification in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In that case, Lexmark moved to dismiss a counterclaim on the grounds that the opposing party lacked statutory—but not Article III—standing to bring the action under the Lanham Act because they did not "fall within the zone of interests protected by the law invoked." *Id.* at 129 (internal quotation marks omitted) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). In a footnote, the Court acknowledged that it had "on occasion referred to this inquiry as 'statutory standing' and treated it as effectively jurisdictional," but said that the term was "misleading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'" *Id.* at 128 n.4 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002)). *Lexmark* thus strongly suggests that statutory standing questions are nonjurisdictional. Indeed, in a pre-*Lexmark* decision, we stated that "a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter

jurisdiction." *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

Nevertheless, questions of statutory standing are complicated and may turn on the peculiar language of the statute in question. We cannot definitively pronounce that no such questions are subject-matter adjacent questions, and thus exempt from the mandate of *Steel Co.* and its progeny. We conclude that the district court was obligated to resolve first whether OFW had Article III standing, unless it can explain why another issue—including OFW's standing to bring suit under Title VII—is dispositive and subject-matter adjacent, thus coming within the *Steel Co.* line of cases.

We are not able to answer these questions on this record. Neither party briefed the Article III question before us. OFW's brief in opposition to the motions to dismiss from the district court docket devoted only a couple of pages to the issue. Without briefing or a developed record on the issue, we are reluctant to rule on these difficult issues in the first instance. Accordingly, we **VACATE** the district court's order and **REMAND** to the district court for further proceedings consistent with this decision.